IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CT-3002-FL

| | | |
|---|---|---|
| DERRICK W. ZITO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DOMINIQUE PEPPERS and TYLER CLEVENGER, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 29). The motion was fully briefed, and the issues raised are ripe for ruling. For the following reasons, the motion is denied.

### STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action January 2, 2020, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff asserts defendants Dominique Peppers ("Peppers) and Tyler Clevenger ("Clevenger"), correctional officers at Central Prison, used excessive force against him in violation of the Eighth Amendment to the United States Constitution. As relief, plaintiff seeks monetary damages.

Following a period of discovery,[1] defendants filed the instant motion for summary

---

[1] On April 29, 2021, the court appointed North Carolina Prisoner Legal Services, Inc. ("NCPLS") to represent plaintiff for the discovery phase of the case. The parties completed discovery on or about August 18, 2021, and NCPLS thereafter withdrew from its limited appointment under Standing Order 20-SO-1.

1

judgment, arguing the record evidence establishes they did not use excessive force against plaintiff, and they are entitled to qualified immunity. In support, defendants rely upon a statement of material facts and appendix of exhibits comprising the following: 1) declaration of counsel with exhibits A–C comprising North Carolina Department of Public Safety ("DPS") offender public information regarding plaintiff, video recording of the February 12, 2019 incident, and DPS's policy and procedures regarding use of force; and 2) defendants' declarations. Plaintiff responded in opposition, relying upon a statement of material facts and his own declaration.

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. On February 12, 2019, prison officials assigned plaintiff to the 1300–1400 block of the mental health unit at Central Prison due to self-injurious behavior. (Peppers Decl. (DE 30-7) ¶¶ 3–4; Clevenger Decl. (DE 30-8) ¶¶ 3–4; Pl.'s Decl. (DE 31-1) 1).[2] Defendants escorted plaintiff to cell 1305 and ordered plaintiff to kneel on a bunk, which order plaintiff followed. (Peppers Decl. ¶ 3; Pl.'s Decl. at 1; Video Footage (DE 30-5) C209-1305-MH cell at 05:13:48–05:13:53).[3] Defendants then removed all of plaintiff's clothing because inmates on self-injurious behavior are only allowed a blanket and a smock. (Peppers Decl. ¶ 4; Clevenger Decl. ¶ 5; Pl.'s Decl. at 1; Video Footage (DE 30-5) C209-1305-MH cell at 05:13:53–05:16:06).

The parties dispute whether plaintiff resisted defendants while they removed his clothing. (Compare Peppers Decl. ¶ 5; Clevenger Decl. ¶ 6 with Pl.'s Decl. at 1–2). Defendants contend

---

[2] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[3] The relevant video recording was filed manually with the clerk of court. (See Order (DE 35)).

2

that plaintiff behaved "aggressive[ly]" by "twisting and turning his body," and that plaintiff stopped resisting when defendant Peppers applied the bent wrist technique.[4] (Peppers Decl. ¶ 5; Clevenger Decl. ¶ 6). Plaintiff contends that defendant Peppers "squeez[ed] [his] arm" and "twist[ed]" his handcuffs tighter than needed. (Pl.'s Decl. at 1). Plaintiff alleges that he "asked [defendant Peppers] to loosen the cuffs and his grip on [plaintiff], telling him he was hurting [plaintiff]." (Id. at 2).[5] Plaintiff alleges that defendant Peppers responded by telling him to "stop resisting." (Id.). Plaintiff concedes that he twisted and turned his body "not to resist but to get [defendant Peppers] to stop hurting [him]." (Id.).

The video recording shows the process of defendants removing plaintiff's clothing, but plaintiff is not fully visible throughout the entire process because the officers hover over him at certain points which obstructs the view. (Video Footage (DE 30-5) C209-1305-MH cell at 05:14:23–05:14:32). The video depicts plaintiff dangling his feet over the bunk when defendants begin removing his clothing. (Video Footage (DE 30-5) C209-1305-MH cell at 05:14:03–05:14:23).

When defendants finished removing plaintiff's clothing, they escorted him to the cell door. (Peppers Decl. ¶ 6; Clevenger Decl. ¶ 7; Video Footage (DE 30-5) C209-1305-MH cell at 05:16:06–05:16:12). The parties dispute whether plaintiff resisted defendants at the cell door. (Compare Peppers Decl. ¶ 6; Clevenger Decl. ¶ 7 with Pl.'s Decl. at 2–3). Defendants contend that plaintiff attempted to pull his restraints into the cell and that defendant Peppers applied the

---

[4] The bent wrist technique "is a form of body mechanics compliance, which is when joints are turned in such a way that the person cannot move without causing themselves pain or discomfort." (Peppers Decl. ¶ 10).

[5] The video recording has no sound.

3

inverted finger technique to plaintiff's right pinkie finger to restore order.[6] (Peppers Decl. ¶ 6; Clevenger Decl. ¶ 7). Plaintiff contends that "[t]here was no resistance," that his "hands were placed in the straps," and that defendant Peppers "used extreme unnecessary force and maliciously broke [his] finger with the intent to cause physical harm, resulting in surgery." (Pl.'s Decl. at 2).

The entire incident at the cell door is not visible on the video recording. (Video Footage (DE 30-5) C209-1305-MH cell at 05:16:12–05:17:35). Only a small portion of the top of plaintiff's head is visible during this time. (Id.). The video depicts plaintiff walking around his cell and holding his wrist after the incident. (Video Footage (DE 30-5) C209-1305-MH cell at 05:17:36–05:17:59). Plaintiff alleges he was "tr[ying] to tell someone [his] finger was broke." (Pl.'s Decl. at 2).

Plaintiff was medically screened after the use of force incidents and suffered from a broken bone resulting in surgery. (Peppers Decl. ¶ 8; Clevenger Decl. ¶ 8; Defs.' Mem. (DE 30) at 8; Pl.'s Decl. at 2). Defendants contend that "[a]ll force used was minimal and justified in order to gain control of [plaintiff,]" which plaintiff denies. (Compare Peppers Decl. ¶ 9; Clevenger Decl. ¶ 10 with Pl.'s Decl. at 3).

## DISCUSSION

A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing

---

[6] The inverted finger technique is similar to the bent wrist technique, except applied to the fingers. (Peppers Decl. ¶ 11).

the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus,

5

judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture."  Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005).  By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied.  Id. at 489-90.

B.      Analysis

Plaintiff alleges defendants used excessive force against him in violation of the Eighth Amendment.  The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment.  Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong.  Under the objective prong, the inmate must establish that the forced used was "nontrivial" or more than "de minimis." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 10 (1992).  Here, defendants do not argue the use of force was nontrivial, and thus the court proceeds to the subjective component of the claim.

To satisfy the subjective prong, the inmate must show a prison official acted with a "sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 297 (1991).  In an excessive force case, "the 'state of mind required is wantonness in the infliction of pain.'"  Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (quoting Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)).  The relevant inquiry for the subjective prong is whether the force was applied "in a good faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing harm."  Whitley, 475 U.S. at 320-21; Brooks, 924 F.3d at 113.  The "question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular

6

officers did use force for that reason." Brooks, 924 F.3d at 113. "Corrections officers act in a 'good faith effort to maintain or restore discipline'–that is, with a permissible motive–not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." Id. (quoting Hudson, 503 U.S. at 6-7); see also Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021). "But corrections officers cross the line into an impermissible motive – using force 'maliciously' and for the 'very purpose of causing harm,' – when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." Brooks, 924 F.3d at 113 (quoting Whitley, 475 U.S. at 320-21); see also Williams v. Benjamin, 77 F.3d 756, 765 (4th Cir. 1996).

At the summary judgment stage, "the inquiry under the subjective component boils down to whether a reasonable jury could determine that an officer acted with malice, applying force punitively and 'for the very purpose of causing harm.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 320-21). The officers' subjective motive may be proved through direct or circumstantial evidence. Id. at 308-09; Brooks, 924 F.3d at 114-16. With respect to circumstantial evidence, the court considers four factors "from which . . . inferences may be drawn as to the officers' motives." Brooks, 924 F.3d at 116. These factors are: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 321).

Applying the Whitley factors, there are genuine issues of material fact regarding the need

7

for force and the amount of force used. Plaintiff's declaration supports his contention that he did not resist officers, and his version of the facts is not blatantly contradicted by the video evidence submitted. For example, plaintiff states: 1) defendant Peppers was "squeezing [his] arm and twisting the handcuffs"; 2) he asked defendant Peppers to "loosen the cuffs and his grip on [him], telling [defendant Peppers] he was hurting [him, but defendant Peppers responded by telling him] to stop resisting"; 3) he was "twisting and turning, not to resist but to get [defendant Peppers] to stop hurting [him]"; and 4) that "[t]here was no resistance [because his] hands were placed in the straps [when defendant Peppers] used extreme unnecessary force and maliciously broke [his] finger." (Pl.'s Decl. (DE 39-1) at 1–2).

Based upon the foregoing, viewing the evidence in the light most favorable to plaintiff, a trier of fact could conclude that defendants used force wantonly and maliciously for the purpose of causing harm. See Dean, 984 F.3d at 302; see, e.g., Fraley v. Davis, No. 21-6641, 2022 WL 3210702, at *2 (4th Cir. Aug. 9, 2022) (finding that it was unclear from the video in the record whether plaintiff posed a threat to prison order or whether defendant's use of force was needed); Poindexter v. Sandy, No. 21-6638, 2022 WL 1656126, at *2–6 (4th Cir. May 25, 2022) (finding that the video evidence did not "blatantly contradict" plaintiff's description of the beating in the bathroom); Love v. Beasley, 788 F. App'x 935, 937 (4th Cir. 2020) (holding that the district court did not err in finding that a defendant did not punch the plaintiff as alleged because the video evidence confirmed the defendant's denial); Greene v. Feaster, 733 F. App'x 80, 81–82 (4th Cir. 2018) (holding that the district court erred in not considering plaintiff's verified version of events concerning the use of force incident); Servidio v. Pittman, 632 F. App'x 747, 749–50 (4th Cir. 2015) (holding that the evidence, viewed in the light most favorable to plaintiff, could support a

jury finding that the officers wantonly administered significant force to plaintiff in retaliation for his conduct rather than for the purpose of bringing him under control). As such, there is a genuine issue of material fact regarding whether defendants violated plaintiff's Eighth Amendment rights.

Defendants nonetheless assert that the use of force was necessary to restore order and that the video evidence clearly captured plaintiff struggling and resisting officers. (See Defs.' Mem. (DE 30) at 9–10). However, during the first use of force incident, plaintiff is not fully visible on the video recording because the officers hover over him at certain points which obstructs the view, and the entire second use of force incident is not visible on the video recording. (Video Footage (DE 30-5) C209-1305-MH cell at 05:14:23–05:14:32, 05:16:12–05:17:35). Therefore, defendants' argument is unavailing because it draws inferences from the facts not in the light most favorable to plaintiff, contrary to the summary judgment standard. See Diebold, 369 U.S. at 655.

Defendants also assert the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As discussed above, there is a genuine issue of material fact regarding whether defendants violated plaintiff's clearly established Eighth Amendment rights. Thus, defendants are not entitled to qualified immunity. See, e.g., Brooks v. Johnson, 924 F.3d 104, 118–120 (4th Cir. 2019); Ussery v. Mansfield, 786 F.3d 332, 338 (4th Cir. 2015); Tedder v. Johnson, 527 F. App'x

9

269, 274 (4th Cir. 2013).

## CONCLUSION

Based upon the foregoing, defendants' motion for summary judgment (DE 29) is DENIED. Pursuant to Local Alternative Dispute Rule 101.1, EDNC, this case is REFERRED to United States Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference, for the purpose of resolving all issues in dispute. The magistrate judge will notify the parties how he wishes to proceed. The court APPOINTS North Carolina Prisoner Legal Services ("NCPLS") to represent plaintiff at the settlement conference. See Standing Order 21-SO-11, ¶ 7. The clerk shall send a copy of this order to notify NCPLS of its appointment. In the event the parties do not reach a resolution of this action, further order regarding trial planning and scheduling will follow.

SO ORDERED, this the 29th day of September, 2022.

LOUISE W. FLANAGAN
United States District Judge